**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

STEVEN W. BLEVINS,
      **Plaintiff,**

                                    **Civil Action 2:16-cv-530**
     **v.**                              **Judge Michael H. Watson**
                                    **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

       **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Steven Blevins, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This

matter is before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition

(ECF No. 22), and the administrative record. (ECF No. 9.) For the reasons that follow, the

Undersigned **RECCOMENDS** that the Court **REVERSE** the Commissioner of Social Security's

nondisability finding and **REMAND** this case to the Commissioner and the administrative law

judge under Sentence Four of § 405(g).

### I. BACKGROUND

Plaintiff filed his application for benefits on June 25, 2013, alleging that he had been

disabled since October 31, 2008, later amended to June 3, 2013. (R. at 10.) Plaintiff's

application was denied initially on August 9, 2013, and upon reconsideration on January 22,

2014.  (*Id.*)  Thereafter, Plaintiff sought a *de novo* hearing before an administrative law judge. (*Id.*)

Administrative Law Judge Edmund E. Giorgione ("ALJ") held a hearing on September 23, 2015, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 29–41.) Medical Vocational Expert Carl W. Hartung also appeared and testified.  (R. at 29, 41–46.)  On October 20, 2015, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10–23.)  On April 15, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–6.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff, who was fifty-two years old at the time of the hearing, testified that that he has a ninth grade education, is divorced, lives alone in a house and last worked in construction.  He testified that he is able to interact okay with family and friends and does not have any problems with crowds or strangers.  (R. at 37.)  He testified that his brother and sister help him with household chores.  (R. at 38.)  He drives, but has some difficulty sitting.  (R. at 37.)  Plaintiff smokes a pack of cigarettes a day.  (R. at 39.)  He claims that his most severe problem is his lower back and that he stopped working in 2008 when he was laid off and collected unemployment.  (R. at 35.)  He said that he intended to go back to work; however his pain was too much.  He further testified that he can only stand and walk for ten minutes and only sit for ten minutes.  (R. at 36.)  He said he can lift ten pounds.  (*Id.*)  Plaintiff underwent back surgery in June 2014, which he said has helped.  (R. at 40–41.)  He testified that prior to the surgery his impairments were so severe as to render him unable to walk.  (R. at 41.)

**B.** **Vocational Expert's Testimony**

The Vocational expert ("VE") testified at the administrative hearing that Plaintiff's past relevant employment as construction worker required a very heavy level of physical demand. Based on Plaintiff's age, education, work experience, and residual functional capacity, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work, but could perform a number of other jobs. The other jobs include: housecleaner, with 4,202 jobs in the state and 133,887 nationally; marker, with 11,223 jobs in the state and 271,554 nationally; labeler with 1,053 jobs in the state and 26,506 nationally. (R. at 44.)

### III. MEDICAL RECORDS[1]

**A. Examining Physician Records**

On June 3, 2013, Plaintiff went to the emergency room reporting back pain. (R. at 261.) The physical examination revealed soft tissue tenderness in the left lower lumbar paraspinous region and limited range of motion in his left lower leg. (R. at 261–62.) Plaintiff underwent an MRI of his spine on the same day. The MRI revealed "an area of abnormality behind the L4 vertebral body that likely represents a free disc fragment. This effaces the anterior left aspect of the thecal sac. The thecal sac is not stenotic. There is a minimum disc bulge at L4-5. Disc and osteophyte narrows the left neural foramen greater than right." (R. at 267.)

On July 7, 2013, Plaintiff visited Dr. W. Bradley Strauch. Plaintiff reported that "he worked laying concrete and has not been able to work over the past couple of weeks." (R. at 243.) The physical examination revealed restricted flexion in lumbar spine, pain with lateral bending and rotation, mild tenderness over the iliolumbar regions bilaterally, as well as mild tenderness at the lumbrasacral junction and tenderness extending to the PSIS regions bilaterally

---

[1] The Court limits its analysis of the medical evidence to the issues raised in Plaintiff's Statement of Errors.

with no tenderness of the SI joints and no evidence of scoliosis. (R. at 244.)  Dr. Strauch

recommended that Plaintiff see Dr. James Fleming for surgical consideration.

On June 18, 2013, Plaintiff visited Dr. Fleming.  Dr. Fleming reported that Plaintiff had

an antalgic gait pattern, some weakness in his ankle dorsiflexion and quad extension on his left

side, and an equivocal straight leg raise.  (R. at 246.)  Dr. Fleming assessed lumbar disc

herniation, lumbar radiculopathy, and lumbar degenerative disc disease.  (*Id.*)

On June 30, 2013, Plaintiff returned to the emergency room reporting back pain.  (R. at

251.)  At discharge Plaintiff reported his pain level was reduced to a four out of ten.  (R. at 252.)

The emergency room doctor proscribed Percocet.  (*Id.*)

Plaintiff appeared on November 8, 2013, with Dr. Phillip Swedberg for a consultative

examination.  (R. at 276.)  Plaintiff reported that he has experienced lower back pain since 2008

and takes over-the-counter Tylenol and Advil, but not other medication.  (R. at 276.)  Dr.

Swedberg's physical examination revealed Plaintiff was able to ambulate with a steady gait

without the use of an ambulatory aid and he "appeared comfortable in the sitting and supine

position."  (R. at 277.)  Plaintiff was unable to squat or walk heel to toe and exhibited a

decreased range of motion of the lumbosacral spine.  Dr. Swedberg also reported that Plaintiff

had paraspinal muscle tenderness and his lumbosacral spine was positive for straight leg raising

at sixty degrees bilaterally.  Based on the examination, Dr. Swedberg opined Plaintiff "appeared

capable of performing a mild-to-moderate amount of sitting, standing, ambulating, bending,

kneeling, pushing, pulling, lifting, and carrying heavy objections.  (R. at 278–79.)

Over the course of the next year Plaintiff's medical records reflect physical examinations

with similar findings including some tenderness and pain in the paravertebral musculature

lumbar spine and assessments for lumbar pain and L4 disc disease, pain with flexion and extension, lumbar disc disease, lumbago, and peripheral neuropathic pain.  (R. 372, 375.)

On January 29, 2014 and then again on March 21, 2014, Plaintiff visited Dr. Ellis Frazier. During the January visit Dr. Frazier prescribed 7.5 mg of Mobic, 4 mg of Zanaflez, and Percocet. (R. at 375.)

On April 3, 2014, Dr. Fleming's physical examination revealed an antalgic gait pattern (R. at 353.)  Plaintiff received a transforaminal epidural steroid injection on April 25, 2014.  (R. at 335.)  On May 29, 2014, Plaintiff reported to Dr. Fleming that the epidural steroid injection did not help.  Dr. Fleming assessed lumbar radiculopathy and lumbar disc herniation and recommended microdiscectomy L4-L5 surgery.   (R. at 348.)  Plaintiff underwent microdiscectomy surgery.  (R. at 365, 403.)  He reported continued back pain but less pain down his left leg. (*Id.*)  He also reported that he is able to sit and lay, but that if he lays for too long he experiences pain. (*Id.*)

On August 11, 2014, a physical examination revealed stiff posterior cervical muscle tenderness with decreased range of motion, infrascapular musculature, and lumbar paravertebral musculature. (R. at 364.)  In November, 2014, Dr. Frazier reported similar findings, but noted Plaintiff experienced pain in his neck.  Dr. Frazier assessed herniation of intervertebral disc L4 and L5, lumbar radiculopathy, sleep disturbance, mood and affect disturbance, and chronic pain. (R. at 360.)  From March 24, 2015 through April 3, 2015, Plaintiff attended physical therapy. His therapist reported that Plaintiff "tolerated treatment very poorly" and recommended pain management. (R. at 387–88.)

On April 25, 2015, Plaintiff went to the emergency room after being in a car accident. (R. at 411.)  The physical examination revealed moderate tenderness in the head with mild

swelling and subcutaneous laceration of the anterior aspect of the vertex.  (R. at 412.)  On May 7,

2015, a physical examination performed by Dr. Chamberlain revealed decreased lumbar lordosis,

decreased extension with increased lumbar paraspinal pain, decreased right side bending with

increased ipsilateral lumbar paraspinal pain, decreased left side bending with increased ipsilateral

lumbar paraspinal pain, soft tissue tenderness, and paraspinous tenderness bilaterally.  (R. at

400–401.)  Dr. Chamberlain performed medical branch blocks, which Plaintiff reported helped

for a day before his symptoms returned.  (R. at 421.)

**B.  Non-examining Physician Records**

In January 2014, Dr. Edmond Gardner reviewed the record evidence on reconsideration.

(R. at 71–87.)  Dr. Gardner provided an assessment from the period beginning February 3, 2013,

prior to Plaintiff's amended onset date.  (R. at 81.)  Dr. Gardner opined that Plaintiff could

perform light work including lifting/carrying twenty pounds occasionally and ten pounds

frequently; standing/ walking about six hours in an eight-hour workday; and sitting at least six

hours in an eight hour workday.  (R. at 81–82.)  He further opined that Plaintiff could frequently

climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel,

crouch, and crawl.  (R. at 82.)

## IV.      ADMINISTRATIVE DECISION

On October 20, 2015, the ALJ issued his decision.  (R. at 10–23.)  At step one of the

sequential evaluation process,[2] he found that Plaintiff had not engaged in substantially gainful

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?

activity since June 3, 2013, the alleged onset date of disability. (R. at 12.) The ALJ found that

Plaintiff had the severe impairments of degenerative disc disease of the back status post

microdiscectomy at L4-5, and affective and anxiety disorders. (*Id.*) He further found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 12–13.)

> At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk for six of eight hours; sit for six of eight hours; unlimited pushing and pulling except as defined by the ability to lift and carry; frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, and crawl; can interpret simple instructions and perform simple routine repetitive tasks with no strict time or production demands; capable of occasional superficial contact with supervisors, co-workers, or the general public; capable of work in a static work environment with static work processes and procedures. Furthermore, the claimant would not be able to squat (or crouch) or walk heel to toe and he would need demonstration of new tasks.

(R. at 14–15.)

> In reaching this determination, the ALJ pointed to inconsistencies throughout the record.

After reviewing a July 23, 2013 function report, the ALJ found that Plaintiff's limitations on

---

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

daily activities were not as limited as he testified. (R. at 16.) In the function report, Plaintiff reported the following activities: "watching television, cleaning, talking to friends on the phone, walking around the yard, caring for a dog, preparing meals, sweeping, washing dishes, doing laundry, mowing the yard on a riding mower, driving, shopping in stores for food, paying bills and handling a savings/checking account." (R. at 16.) Moreover, the ALJ noted that Plaintiff testified he has not worked since 2008, since being laid off and then experiencing too much pain to return to work, however, June 7, 2013, he reported that "he works laying concrete and has not been able to work over the past couple of weeks." (R. at 16.) Based on this report, the ALJ concluded Plaintiff "was admittedly working laying concrete while applying for disability and claiming an inability to work." Plaintiff testified that he was prescribed and used a cane. (R. at 35–36.) The ALJ however, points to different parts of the record which show otherwise. For example, at a consultative examination November 8, 2013, Plaintiff was described as ambulating with a steady gait without the use of an ambulatory aid.

The ALJ gave great weight to the findings and opinion of the consultative examiner, Dr. Swedberg. Summarizing Dr. Swedberg's exam, the ALJ stated:

> [T]his is a 51-year-old male who states he is unable to work secondary to "my back." On physical examination, the patient walked with a steady gait without the use of ambulatory aid. He did have decreased range of motion of the lumbosacral spine and was unable to squat or walk heel to toe. He also had a positive straight leg raising test bilaterally and decreased sensory examination, left lower extremity. The rest of the neuromuscular examination of the bilateral lower extremities was within normal limits. Based on the information described above, the patient appears capable of performing a mild-to-moderate amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient had no difficulty reaching, grasping, or handling objects. There are no visual or communication limitations, nor are there environmental limitations.

(R. at 16–17.) The ALJ balanced this with Plaintiff's treatment history, which he noted contains significant gaps. The ALJ noted that after Plaintiff went to the emergency department

on June 30, 2013, he did not seek additional follow-up treatment prior to the November 8, 2013 consultative examination. (R. at 16.) The ALJ acknowledged Plaintiff's claim that the gap stemmed from his inability to afford treatment. (R. at 17.) The ALJ, however, found that justification unreasonable because "[Plaintiff] reported taking nothing for pain at his November 17, 2013 emergency department treatment. However, he admitted to smoking one to two packs of cigarettes daily. Thus, he has been spending money on things like cigarettes while claiming an inability to afford medical treatment." (*Id.*) The ALJ moreover pointed out that Plaintiff was repeatedly warned that his continued smoking aggravates his back pain and that smoking cessation was recommended. (*Id.*)

Reviewing medical records prior to Plaintiff's back surgery, the ALJ determined that Plaintiff's records as a whole did not support a finding of disability. (R. at 16–18.) For example, the ALJ noted that pre-surgery medical records showed that Plaintiff reported working laying concrete in June 2013, a time he claims he was unemployed. The ALJ also noted that during the pre-operative evaluation, Plaintiff "reported being able to climb one flight of stairs slowly, walk on flat ground at a slow steady pace, and do strenuous household chores (mow  grass) without experiencing any chest pain." (R. at 18; citing R. at 310.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 23.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286

(6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.

Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of

the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir.  2007)).

## VI.     ANALYSIS

In his Statement of Errors, Plaintiff argues that the ALJ's RFC was not based on substantial evidence and that the ALJ erred in giving Dr. Swedberg's opinion 'great weight.' (SOE at 12.)[3]

### A.  The ALJ failed to consider a closed period

The ALJ erred in assessing Plaintiff's RFC by failing to consider the twelve-month period prior to Plaintiff's surgery separately from the time period after Plaintiff's surgery. The ALJ's found a light RFC, reflective of improvements Plaintiff experienced post-surgery, and yet assessed one RFC for the entire time period.  (SOE at 12 (quoting R. at 19 "while the record shows continued pain complaints, there is also evidence of reduction of his symptoms with treatment.  The claimant admitted that the back surgery, which had been delayed for financial reasons, was helpful in both reducing his pain and in resolving his radiculopathy.").)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When considering the medical evidence and calculating the RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

---

[3] Because the ALJ's RFC did not include a closed period and is therefore not supported by substantial evidence requiring the case to be remanded for further fact finding, the Undersigned will not specifically address Plaintiff's remaining contention of error.

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set

forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in
> the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

To qualify for disability benefits, Plaintiff need not show that he was disabled at the time

of the hearing, only that he was disabled for any consecutive twelve-month period between the

alleged onset date and the hearing date.  41 U.S.C. § 423(d)(1)(A).  An ALJ's failure to consider

whether a closed period of disability existed is subject to remand.  *Allison v. Comm'r of Soc.*

*Sec.*, Case No. 96-cv-3261, 1997 WL 103369, at *2 (6th Cir. March 6, 1997);  *Shiplett v. Colvin*,

No. 5:15-cv-55, 2016 WL 6783270, at *13 (W.D. Va. Nov. 16, 2016) (remanding to determine

whether a closed period is appropriate between a surgery and an EMG study revealing no active

nerve root irritation); *Puryear v. Comm'r of Soc. Sec. Admin.*, No. 4:14-cv-00057, 2016 WL

462822, at *6 (W.D. Va. Jan. 5, 2016) (remanding for the ALJ to consider a closed period of

disability due to "evidence indicating greater impairment before [plaintiff's] surgery"); *Reynoso*

*v. Astrue,* No. CV 10-04604, 2011 WL 2554210, at *5–7 (C.D. Cal. June 27, 2011) (remanding

based on ALJ's failure to consider whether claimant had a closed period of disability prior to undergoing surgery).

Plaintiff alleges that he suffered from disabling back pain since his alleged onset date June 3, 2013. He underwent lumbar spine surgery a little more then twelve months later, on June 18, 2014. In his decision, the ALJ implied that Plaintiff was more limited prior to surgery when he indicated that he found a light RFC based in-part on Plaintiff's improvement post-surgery. (R. at 17.) Evidence in the record, including Dr. Fleming's treatment notes, suggests Plaintiff suffered from serious injury from lumbar radiculopathy and lumbar disc herniation prior to improvements after his surgery. (R. at 348.) If Plaintiff's impairments rendered him disabled for more than twelve months during that period, he would be entitled to a closed period of benefits. *Forman v. Comm'r of Soc. Sec.*, No. 1:06-cv-805, 2008 WL 3166332, at *4 (S.D. Ohio Aug. 4, 2008) (finding factual issues unresolved where ALJ failed to consider whether there was substantial evidence to support a finding of a closed period of disability.) Because the ALJ did not address Plaintiff's impairments in terms of a closed period or analyze his preoperative period of impairment separately, the Court cannot discern whether Plaintiff's impairments rendered him disabled during the twelve-month period prior to surgery. Therefore, on remand, the ALJ must conduct a more thorough analysis of the record and determine whether the evidence supports awarding a closed period of disability benefits or if Plaintiff is otherwise entitled to disability benefits.

## VII.    CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECCOMENDS** that the Court **REVERSE** the Commissioner

and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 14, 2017                              /s/ *Elizabeth A. Preston Deavers*
                                          ELIZABETH A. PRESTON DEAVERS
                                          UNITED STATES MAGISTRATE JUDGE